Good morning, Your Honors. May it please the Court, my name is Annie Amaral and I represent Josh Thomas, the appellant. At this time, I would like to reserve two minutes for rebuttal, please. All right. The facts of this case arise in a prison setting, but the issues are not prison-specific. The first issue is whether an individual who discovers during the course of his underlying lawsuit that the opposing counsel has obtained his medical records without his authorization or consent, whether he can file a subsequent lawsuit to avenge that constitutional right that's been infringed upon. The answer is yes. Assuming that he does, we don't really know any of the circumstances, do we? I mean, this comes to us on an appeal from a 12b6 dismissal. Actually, Your Honor, it comes on appeal from a dismissal after a screening of the complaint. There was no 12b6 filed by the court. You don't have any kind of a record at all here. That is absolutely correct, and it's part of the problem with why the court dismissed it in the manner it did. So would the prudent thing to do be, assuming that he does have a right, to send it back so that a better factual record can be obtained, so that we understand how it was the records were accessed? Yes, absolutely. And the appellees concede on the first page of their opening brief that Mr. Thomas and individuals, period, have that right to file the subsequent lawsuit. The right to file the lawsuit only gets you so far. The court, you still have to prove your case. Right. And he also sufficiently pled all of the elements of those claims in his complaint. And as I set forth in Mr. Thomas' opening brief and the appellee's response, they don't challenge any of the elements that he pled. They're fine with the manner in which he actually stated his claim. The appellee's position is that there are two other issues that determine the outcome of this appeal. The first one is they contend that Mr. Thomas waived his right to privacy when he filed that underlying lawsuit. And the problem, as Your Honor has already alluded to, is that we simply don't know what the circumstances were. There's been no factual determination. And the district court did not make that express determination that a waiver existed. Instead what the district court did was he used some advisory language to advise Mr. Thomas what might happen on down the line, that it's a possibility that a waiver could be determined or found by the district court. He also warned Mr. Thomas that discovery is likely and a possibility out there. But he never applied that language to Mr. Thomas' complaint. And a perfect comparison for that is the Williams v. Barron case, which appellees cite at length in their answering brief. And in that case, the district court used almost identical advisory language, setting up the conversation and explaining to the 1983 plaintiff there that a waiver is a possibility. However, the Williams v. Barron case took it a step further. And what the district court said there, quote, in the instant action, plaintiff presses claims of deliberate indifference to plaintiff's serious medical needs, alleging various failings on the part of defendants to provide adequate medical care. Accordingly, plaintiff has placed his medical records at issue. No such language is included in the district court's order dismissing Mr. Thomas' complaint. So the waiver argument is irrelevant and not available for this court to use at this point since it's not been considered by the court below. Maybe not irrelevant, but at least premature. Absolutely, Your Honor. The second issue that the appellees contend would be dispositive of this appeal is the issue of immunity. And they set out somewhat of an overbroad characterization of the absolute immunity rule. They contend that absolute immunity is provided to governmental attorneys defending a civil lawsuit. And this is, as I've already stated, somewhat overbroad. The Bly McGee case explains that the conduct in question must be related to that official's duties in the course of the litigation. Conduct wholly unrelated or outside the scope of the official duties simply isn't covered. Ms. Amaral, I'm back to the same issue that concerned me on the first issue. And that is, without knowing what it was that the Assistant Attorney General and his paralegal did here, how can we opine at great length on the propriety of the conduct when we don't have a record as to what the conduct was? You absolutely cannot opine on what the conduct was, whether it was within the scope or not, because in Mr. Thomas' complaint, he simply didn't say. He provided Defendant Mendoza's and explained that she used her legal, her title and her position at the office to obtain that information. But Mr. Thomas did not plead or pretend to know the purpose for their actions. Considering that the appellees obtained that information four months in advance, as they stipulate to in their answering brief, considering that they obtained that information so early on in the process and before the regular timelines would have permitted it, it's premature at this stage to also pretend to know whether they were acting within the scope or not. The Bly-McGee case also explains that simply because they were taking this conduct and acting within the course of their duties and they were, excuse me, not within the course of their duties but at the time that the litigation was ensuing, simply because they did it at that time isn't enough to say that the conduct was part of their official duties, because in that case, the plaintiff was suing the Defendant Attorney General and explaining that he was covering up acts to protect family and friends. And although it was occurring within the context of litigation, because he was doing it for personal reasons and to benefit those other individuals, it wasn't official. And he was, they don't use this misusing his authority. The only thing we know, or maybe we don't even know this, these are records that are maintained by the Department of Corrections regarding medical records of the inmate, is that right? Do we know that from his? I don't know the extent of the record itself, whether it's only medical records that have developed since Mr. Thomas was originally incarcerated or if it includes his entire history. Without regard to the content, I guess what I'm really asking is who holds the records? Who's the custodian? The custodian is the Department of Corrections, is it not? That is correct, Your Honor. And we know that the California Attorney General is the legal counsel for the Department of Corrections, right? We do know that, Your Honor. So that's all we know at this point? Yes. Okay. Sir? Oh, sorry, go ahead. Please. Can't we assume that defense attorneys who are defending a claim that involves a physical condition of the prisoner, that is his claim that he can't do certain types of work, isn't it their duty to investigate and discover all facts related to his physical condition? We can infer that that would be part of their investigation down the line, but knowing what we have before us now, which is only Mr. Thomas' original complaint, we don't know what the scope of that responsibility would have been. We don't know the entire content of the allegations that were at issue in the underlying suit and presumably the medical records that were obtained. It was his complete and unredacted file and there's case law that speaks to the issue of the scope of the waiver, whether they're entitled to all information about his medical records, going beyond simply the things that were prohibiting him from doing the work assigned, which was the matter at hand in the first lawsuit, or whether it goes beyond that to his mental records, et cetera. And what I'm having a problem with is distinguishing between a discovery abuse, that is attorneys who don't follow the rules, and a constitutional violation of a dimension that would cause us to recognize such a right to be free from people who are doing their duties as state or government employees. Of course. To investigate. And Gonzalez versus Spencer speaks to this issue exactly, where people or counsel obtain records outside of the typical process, whether it's discovery, an RFP, or a subpoena. It's still, to the extent that they obtained it and they were not entitled to it, it's still a violation of the right to privacy. Infringement of a constitutional right entitles the plaintiff to nominal damages, and a subsequent lawsuit to obtain those nominal damages is permissible. Well, maybe not. That is to say, Gonzalez versus Spencer was a case in which the defendant lawyer was a private attorney who had no ability to assert any form of immunity. So that does not speak to the immunity question. It does speak to the privacy question. It does not speak directly to the immunity question, but insofar as there's a tension between the constitutional issues and the discovery dispute, it does speak to the issue of... It does to that, yes. Yes. Why don't you save your 30 seconds, and we'll hear from the other side. Thank you, Your Honor. Thank you. When you're ready, counsel. Good morning. May it please the Court. My name is Barry Owles. I represent Defendant Apolise Carrasco and Mendoza, who obtained plaintiff's medical records to defend their clients in litigation. There are three grounds on which to uphold the district court's ruling that Mr. Thomas' complaint fails to state a cause of action. First, that the records established that they have retained in the course of litigation after they were placed at issue demonstrates the right was not violated. Second, because the language of the complaint on its face establishes that defendant attorneys obtained the client's records for the purpose of defending clients in litigation, defendants are entitled to absolute immunity, and the controlling case law, third, establishes that defendants are entitled to qualified immunity. As previously stated by the Court That was all three of your grounds. They're different from the ground relied upon below. No. The first, Your Honor, is the ground that it fails to state a claim because of the waiver, and the argument that waiver isn't Maybe I'm mistaken. I had thought that the ground below was you don't have a right to bring this as a separate lawsuit. True. That is the holding, but the order of the complaint says this complaint has been brought in, and pursuant to the Prison Litigation Reform Act, it's been screened, and it fails to state a federal cause of action. And it does so because Because of the waiver. And to say that the district court's ruling uses some precatory language hinges solely on the words in any event, because they point the plaintiff directly to the case law on the fact that the privacy right is limited and can be waived. Then the district court That doesn't The problem I'm having with your argument is that doesn't deprive the district court of the power to adjudicate an otherwise cognizable claim. It's a ruling on the merits that there's no claim in this particular case that I could otherwise hear because you've waived it, and therefore on the merits you lose. If I may, Your Honor, I think the way the district court got there is, although he's a pro se plaintiff, Mr. Thomas's complaint is very focused. He's not challenging what was obtained, simply the manner in which it was obtained. He says these two individuals are litigating on the other side, and as I'm reviewing my records, records which if he was not a pro se plaintiff, he would have had to make an initial disclosure, or that the records could be obtained as you pointed out for counsel. He's saying what they should have done, and he offers two alternatives, is they should have used a request for production of documents, or they should have used a court order. So this is not an instance where he's saying A through Z were obtained, and I'm saying A through F was correct and this is wrongful. It's just the manner in which they were obtained. And what the district court is saying is, because you've placed them at issue and they could have been obtained later, the manner in which they are disclosed is not going to be fruitful. The problem I'm having, though, is with the record. I mean, we have to make some inferences here. The only thing I can tell from reading the pro se complaint is that at some point Mr. Thomas was given access to his prison medical file, and in it he found some indication that documents had been reviewed and produced or given to the Attorney General's office upon request of a paralegal, and that the documents were needed by a certain date. That's correct. We can also look at the chronology and figure out that they were provided shortly before the State moved to dismiss or failure to state a claim. But that's really all we know. There's two additional facts. Okay. In that Mr. Carrasco was defending the first lawsuit. That's in there as well. Okay. And that he was defending clients that were represented by CDCR. And therefore, because he's only challenging the what, and in their opening brief at page 10, they concede that this was obtained for the behest of the State. So it links up in that there was the first lawsuit, Mr. Carrasco's representing the first lawsuit, and that these were records that were obtained. And again, Mr. Thomas is only challenging the manner in which they're obtained. So those basic points which get you to waiver, let alone the immunity arguments, which were also before the Court. But wouldn't you be better off with a fuller factual record? I mean, the concern I have here, Judge Fletcher I think rightly used the word premature, the parties have teed this up in such a way that we're essentially asked to opine not only on the propriety of the disclosure of the records, but also whether or not immunity attaches and whether or not it's absolute or qualified. There's also a question raised in the briefing as to whether or not there's a constitutional right of privacy that attends prison medical records for an inmate. And then we've got the overlay of the basis of the underlying claim, which is that the inmate is claiming that the prison guards ignored his medical condition and ordered him to perform work in the prison that the prison doctors had put him on restricted duty for. I mean, that's an awful lot to ask the Court to issue a ruling on when we have no factual record to support it. I would say that the underlying facts were before the district court who could have taken the case. What facts? Of the first complaint. Of the first complaint. We have an appearance by attorneys for the government, and then we've got to do a whole lot of inference, sort of deductive reasoning, I guess. When you say the complaint, if I can clarify, are you talking about Thomas 1, shall we say? Thomas 1, and I guess the 1983 complaint that he filed at the suggestion of the district court. Thomas 1 would clearly put everything at issue. It's clear in the complaint that he says, I have a preexisting back injury with a long history of medical treatment. Thereafter, I had medical records issued to me that the alleged defendants in the second lawsuit failed to honor. And he claims severe damages, both psychological and physical. In addition, the complaint, while it was unclear whether it was still before the court, there were some allegations about whether or not the sweeteners were giving him cancer. And then finally, he claimed that he was a qualified individual under the Americans with Disabilities Act. So the first complaint, which the district court could have taken judicial notice of, would have clearly established that his medical records during his TCR were at issue. And as to if you're just looking at the second complaint, due to his narrow scope. But we don't know what those records are, do we? I mean, we know that they are records that were in the custody of CDC, and presumably they contain some medical information. But we don't have the records in our record, do we? We don't. But there's no allegation from the second complaint, this matter, that what they obtained wasn't proper. It was simply how it was obtained. But we don't know what they obtained. That's the problem I'm having. You're asking me to opine on all these areas of law without giving me any facts. I mean, I can give you a hypothetical as to when the assistant attorney general employed by the state to represent an agency in a civil rights action is acting within the course and scope of his employment. But the problem here, without knowing what it is that he and the paralegal looked at, I can't tell whether it's relevant to this lawsuit or not. If I may, then, Your Honor, on the second point of the absolute immunity, I believe all of the elements essential to find that defense are on the face of the complaint. First, that issue was before the district court because, pursuant to screening under the PLRA, it would also establish that a defense had been on the face of the complaint. Or, in the second, under the terms of the screening obligation for the district court, they had to examine whether or not any defendants were immune from damages. In that regard, the essential elements that, one, Carrasco and Mendoza were acting as legal counsel, that they were representing someone in an action, and that they were acting at the state's behest are not in dispute. There's no allegations of any misconduct. As addressed in page 10 of the opening brief, it's conceded by the other side. So, and when you look, if you walk through the steps, there is case law. In fact, this court previously has applied immunity to members of the California Attorney General's Office. While it's not controlling, Murphy v. Mesher, 894 F. 2nd, 1101, the 8th Circuit actually applied, on the exact same facts, a pro se prisoner litigation defending a civil case. But when you look at the factors established by the Supreme Court, both in Mitchell v. Forsythe, 472 U.S. 511, and Frye-Melligrano, here in the 9th Circuit, 939 F. 2nd, 982, the first factor is whether or not there's a historical basis. And clearly we have that. And the second is the risk of frivolous and harassing suits to intimidate or vex legal counsel. And originally these were first applied when 1983 Bivens actions were used against prosecutors. We understand, I think, the contours of this kind of immunity. The only difficulty I have is that's not a ground that the court below relied on. And I understand we can affirm on any ground. I'm a little reluctant to do this. I have to say I find this whole case quite frustrating because it's sort of a haste makes waste. The system of screening is set up to make these things easier and less lawyer time. And here we are in the Court of Appeal arguing over something that this has been handled in the ordinary way with an appearance by your office in the district court in the first instance. We would never be here. This case would have been gone a long time ago. But we are where we are. The statute works the way it works. And I'm a little reluctant to tell the district court, well, you know, if it decided this on immunity and tossed the case out on that ground with the possibility that something is going on here that I don't know. And the reason I don't know is the posture of the case. If I may respond quickly. Please. I understand your frustration with the statute. I do believe this is a case that can bear no fruit. And it's simply, the reason it is, is the scope of what was alleged. If he had alleged, look, I have this massive history. Or even just as a pro se prisoner. Had just generally alleged my rights had been somehow violated. Maybe we could read that into it. But his complaint is really specific. He really gets down to the facts and says they got this the wrong way. And the district court, while both of them were for it, said what way isn't going to be the problem because you've placed this at issue. So, and while this Court. No, that's the waiver argument. I'm interested only in the immunity argument. Okay. Thank you, Your Honor. Thank you. Response? I would like, I do have a question. What possible argument would your client have if we send this back with respect to immunity? With respect to immunity, Your Honor, the issue is. Appellee presented that the complaint has all of the facts there. Sufficient to rule on immunity grounds. But Mr. Thomas left out one key fact, which is the purpose for which they obtained these medical records so early on in the litigation and outside the proper bounds. The fact that he could add to his complaint, which would dissolve the immunity defense, would be some reason for which they obtained this information for an improper purpose. That's what Blimey Key v. California speaks to. And the reason that they. He put his medical condition at issue. He's alleged in his complaint that he was made to work when the officials knew that he had a bad back, for example. Then why, I can't imagine a circumstance under which it would be unreasonable for a lawyer representing the Department of Corrections to look at the file to try and figure out what the institution knew about his medical condition. The circumstance where it would be improper would be if there was information within that medical file that did not pertain to his back injury. And that goes to the heart of the questions you were asking earlier, which is simply we don't know what was in there. The proper way to find out would be to have gone through discovery steps, had the district. This is not a situation where you're going to a third-party hospital or a third-party clinic and you're trying to get medical records. The allegation which your client has framed in his complaint is that the Department of Corrections officials ignored what was contained in his medical records and made him do things that the prison doctors had placed him on light duty to protect him from. And I can't imagine under any conceivable theory why it would be  and find out what was in there. I can't imagine a lawyer to try and determine from his client's own files what the Department of Corrections knew about his medical condition when they ordered him to work. And, Your Honor, the only thing that Mr. Thomas alleged was that they ordered him to work to perform job responsibilities that could possibly further injure his back condition. But to the extent that that back condition was an isolated issue, we still have to deal with the scope of everything. Everything else that was contained. What did they use it for that was improper, if you know? Your Honor, I absolutely do not know. And that's the problem. But the question of improper use is different from the question of immunity. You only get to immunity once you've found improper use. So my question is, under what possible circumstances could we imagine not only improper use but also improper use? But also no immunity. It's the immunity question that's bothering me. And the only thing I can offer in response is that we simply have to speculate, because the record is not fully developed. We need more of a factual examination of what's available, what is actually available. Or maybe your argument would just be, well, you know, abundance of caution, let the trial judge have a look. The trial judge has not addressed the question, and maybe there's something that you can't even think of because the record isn't developed. Okay. That's exactly right. Thank you. Thank both sides for their useful argument. The case of Thomas v. Carrasco is now submitted for decision.
judges: Fletcher, Tallman, Dawson